ERIC J. TROUTMAN (State Bar No. 229263)
ejt@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Ave., Suite 700
Irvine, CA  92612
Telephone:   (949) 442-7110
Facsimile:   (949) 442-7118

JOHN B. SULLIVAN (State Bar No. 96742)
jbs@severson.com
MARK D. LONERGAN (State Bar No. 143622)
mdl@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Plaintiff
NATIONSTAR MORTGAGE, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA — SOUTHERN DIVISION

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC,<br><br>              Plaintiff,<br><br>     vs.<br><br>TRUMAN CAPITAL ADVISORS, LP,<br><br>              Defendant. | Case No. 8:13-cv-01114-JST-AN<br>Hon. Josephine L. Staton<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>*[Filed concurrently with Declaration of John B. Sullivan in Opposition to Motion to Dismiss]*<br><br>Date:    October 18, 2013<br>Time:   2:30 p.m.<br>Crtrm.: 10A<br>Judge:  Hon. Josephine L. Staton<br><br>Action Filed:    July 25, 2013 |

80001.0013/2843521.1

## TABLE OF CONTENTS

*Page*

I.      INTRODUCTION ...................................................................................... 1

II.     PERTINENT FACTS ................................................................................. 3

III.    TRUMAN IS BOUND BY THE AUCTION TERMS ..................................... 5

    A.   Truman Is Bound By The Auction Terms .............................................. 6

    B.   The Auction Terms Specified A Conditional Auction .......................... 8

IV.     THE COURT SHOULD EXERCISE ITS DISCRETION TO HEAR THIS DECLARATORY RELIEF ACTION ............................................................. 9

    A.   Needless Determination Of State Law Issues Is Not Decisive ............ 10

    B.   Nationstar Did Not Forum-Shop ......................................................... 10

    C.   Discouraging Duplicative Litigation Favors Neither Party ................. 13

    D.   Other Factors Favor This Court's Retaining Jurisdiction .................... 14

        1.   The Choice Of Law And Forum Selection Clauses Show This Court Is The Proper And Preferred Forum .............. 14

        2.   This Suit Was Filed First ........................................................... 15

        3.   This Suit Serves A Purpose ........................................................ 16

        4.   Truman's Choice Of Forum And Convenience Of Witnesses ................................................................................. 16

V.      CONCLUSION ....................................................................................... 17

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Biegler v. Kraft,* 924 F.Supp.2d 1074 (D. S.D. 2013) ...............................................8

*Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir. 1972) .................................................9

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) ....................................9-11, 13, 14

*Brooks v. Sotheby's,* 2013 WL 3339356 (N.D. Cal. 2013) ........................................7

*City of New York v. Union News Co.*,
      222 N.Y. 263, 118 N.E. 635 (1918) ...............................................................9

*Continental Can Co. v. Commercial Waterway Dist. No. 1*,
      56 Wash.2d 456, 347 P.2d 887 (1959),
      aff'd *en banc,* 354 P.2d 25 (1960).................................................................9

*Cuba v. Hudson & Marshall,*
      213 Ga.App. 639, 445 S.E.2d 386 (1994).....................................................9

*Czasky v. Meyer,* 1995 WL 494574 (S.D. N.Y. 1995)...............................................6

*Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009) ...............................17

*Early Auction Co. v. Koelzer*, 114 So.2d 1038 (Fla. App. 2013)..........................6, 7

*East v. Brown*, 986 P.2d 523 (Okla. Civ. App. 1999) ...............................................8

*Eugene Stud & Veneer, Inc. v. State Bd. of Forestry*,
      3 Or.App. 20, 469 P.2d 635 (1970)................................................................8

*Geodyne Energy Income Prod. P'ship 1-E v. Newton Corp.*,
      161 S.W.3d 482 (Tex. 2005) ..........................................................................6

*Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir.1998) ...................10, 13

*Hessel v. Christie's, Inc.*, 399 F.Supp.2d 506 (S.D. N.Y. 2005)...............................6

*Huth v. Hartford Ins Co.*, 298 F.3d 800 (9th Cir. 2002) ..............................10, 13-16

*In re Eastern Dist. Repetitive Stress Injury Litig.*,
      850 F.Supp. 188 (E.D. N.Y. 1994).........................................................14-15

*In re El Camino Press,* 31 B.R. 340 (Bankr. C.D. Cal. 1983) ..................................8

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)....................................16

*Moore v. Berry*, 40 Tenn.App. 1, 288 S.W.2d 465 (1955)........................................9

*Moss v. Hudson & Marshall, Inc.*,
      267 Ga.App. 322, 599 S.E.2d 279 (2004) .....................................................8

*MSK Ins., Ltd. v. Employers Rein-surance Corp.*,
      212 F.Supp.2d 266 (S.D. N.Y. 2002)...........................................................16

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93 (9th Cir. 1982) ...................... 15

*R.R. Street & Co., Inc. v. Transport Ins. Co*.,
    656 F.3d 966 (9th Cir. 2011) ................................................................. 10, 11

*Samuel T. Freeman & Co. v. Hiam*,
    2012 WL 2120474 (E.D. Pa. 2012) ..................................................... 7, 12-15

*Unisys Corp. v. Access Co., Ltd.*,
    2005 WL 3157457 (N.D. Cal. 2005) ............................................................ 15

*Van Dusen v. Barrack,* 376 U.S. 612 (1964) ............................................................ 14

*Washburn v. Thomas*, 37 P.3d 465 (Colo. App. 2001) ........................................... 6, 8

*Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995) ........................................................ 9

*Young v. Hefton*, 38 Kan.App.2d 846, 173 P.3d 671 (2007) .................................. 6, 8

*Statutes*


*Other Authorities*

Black's Law Dictionary (9th ed. 2009)
    "forum-shopping" ........................................................................................ 11

Restatement (Second) of Contracts
    Section 28 .................................................................................................. 2, 6

# I.

# INTRODUCTION

Defendant Truman Capital Advisors, LP ("Truman") voluntarily registered to participate in an auction of loan pools on Auction.com's website. As part of the registration process, Truman had to, and did, agree to Auction.com's Reserve Auction Terms and Conditions – Pool Notes ("Auction Terms").

The Auction Terms contained a provision choosing California law to govern, interpret and enforce the parties' rights and obligations under the Auction Terms as well as the conduct of the auction. Also by agreeing to the Auction Terms, Truman "irrevocably submitted to the courts of competent jurisdiction in Orange County, California (including federal courts) in connection with any suit, proceeding or other legal process relating to the Auction and/or the offering or sale of any Note."

The Auction Terms also stated:

> No obligation to sell shall be binding on Seller unless and until a written contract of sale or loan sale agreement is signed and delivered by Seller. Seller reserves the right to rescind any oral acceptance of a winning bid prior to execution and delivery of an executed contract of sale or loan sale agreement for any reason.

Having agreed to the Auction Terms, Truman was allowed to bid on loan pools which plaintiff Nationstar Mortgage, LLC ("Nationstar") offered for sale un-der those terms. Truman submitted the highest bid for about 540 loans. But before delivering any contract of sale or loan sale agreement to Truman, Nationstar exer-cised its right to rescind under the just-quoted portion of the Auction Terms.

After months of urging Nationstar to complete the sale or pay it millions of dollars for not doing so, Truman threatened to sue Nationstar—not in California, the forum to which it had agreed and the state whose law it chose—but in its home state of New York. Nationstar then filed this suit to assure that the litigation would proceed in the neutral forum to which Truman had agreed.

Truman does not like the agreed-upon neutral forum, just as it now dislikes

80001.0013/2843521.1

the quoted provision of the Auction Terms which dooms its claim.  So it has filed a peculiarly self-contradictory motion to dismiss.  On the one hand, Truman does— and to prevail on the merits must—insist that it entered into a contract.  On the other hand, it denies that the Auction Terms bind it.  Mot., 10 n. 7.  To reconcile these opposing propositions, Truman claims that it entered into "a separate contract" which obliged Nationstar to sell the loans to Truman but miraculously did not include the Auction Terms.  *Id.*

Truman is wrong.  It cannot run and hide from the Auction Terms any more than it can run and hide from the California forum to which it agreed.

> Unless a contrary intention is manifested, bids at an auction embody terms made known by advertisement, posting or other publication of which bidders are or should be aware ….

Rest.2d Contracts, § 28(2).

Truman was not only aware of the Auction Terms.  It had to, and did, agree to them in order to bid on the loans it says it bought.  Under the just-stated rule, Truman's bids at auction embodied the Auction Terms.  Truman is bound by them.

Since the Auction Terms chose California law and submitted Truman to the jurisdiction of state and federal courts in Orange County, California, this Court is the proper forum for resolution of the dispute that Truman has raised about the auction and the offering or sale of the notes it claims it bought.  That would be true even had this suit been filed after Truman tried to gain a perceived home court advantage by filing suit in New York.  It is even more so since this suit was filed first.

Truman's arguments to the contrary are unconvincing.  No federalism concerns are raised here.  Since Nationstar has removed Truman's New York suit to federal court, a federal judge—either here in California, or in New York—will decide the state law issues in this case, applying California law.  This Court's greater familiarity with California law gives it the advantage.

Nor is forum-shopping a reason to dismiss this case.  Nationstar did not rush to a court in its home state of Texas or any other forum uniquely favorable to it.  It filed suit in a court of competent jurisdiction in Orange County, California, a court to which Truman expressly subjected itself for the resolution of disputes such as those it has raised here.  If anyone forum-shopped, Truman did.  It sought to secure home court advantage in New York and improper application of New York law.

The wasteful duplication of litigating the same dispute in New York as well as California can be avoided by the New York court's staying its hand as easily as by this Court's dismissing this action.  The dispute should be resolved here, in the forum the parties chose, in preference to the New York forum Truman has chosen for its own partisan advantage.

Truman offers no good reason to litigate this matter in New York.  It is located there.  So is the trust for which it acts as agent and investment manager.  That and the fact Truman filed suit there are the dispute's only links to New York.  By contrast, Truman agreed to have its dispute resolved in a California court under California law.  Also, a critical non-party witness—Auction.com—the intermediary between Truman and Nationstar is located in Orange County.  This Court can command the presence of its employees as witnesses at trial.  A New York court cannot.

In short, this is a California dispute governed by California law which ought to be resolved by a California court.  Truman's motion to dismiss should be denied.

**II.**

**PERTINENT FACTS**

The facts relevant to this motion are not seriously disputed.  Nationstar, a mortgage loan servicer, contracted with Auction.com at the beginning of this year to present a substantial number of non-performing loans for sale by auction on Auction.com's website.  Compl., ¶¶ 6, 7; Piliero Decl., Ex. 1, ¶ 12.

Auction.com listed the loans, in various pools, for auction on its website.  Prominently appended to each pool listing on the website, under both the property

description tab and the due diligence documents tab, were the Auction Terms governing the loan pool auctions. Compl., ¶ 8, Piliero Decl., Ex. 1, ¶ 17 & Ex. 1.

The Auction Terms include the following pertinent provisions:

> … The Sellers of the Notes listed have instructed Auctioneer to auction the listed Notes on the Terms and Conditions set forth below. …[P]lease review the Terms and Conditions carefully. Prospective purchasers who register in accordance with the instructions below will be deemed "Bidders" during the Auction. Winning Bidders … will be required to execute loan sale documentation … which … will incorporate many of these Terms and Conditions ….

> \* \* \*

> The respective rights and obligations of the parties with respect to these Auction Terms and Conditions and the conduct of the Auction shall be governed by, interpreted and enforced under the laws of the state of California. By bidding in the Auction by the Internet, each Bidder shall be deemed to have irrevocably submitted to the courts of competent jurisdiction in Orange County, California (including the federal courts) in connection with any suit, proceeding or other legal process relating to the Auction and/or the offering or sale of any Note. …

> … No obligation to sell shall be binding on Seller unless and until a written contract of sale or loan sale agreement is signed and delivered by Seller. Seller reserves the right to rescind any oral acceptance of a winning bid prior to execution and delivery of an executed contract of sale or loan sale agreement for any reason.

> \* \* \*

> By registering for the Auction, Bidder agrees to these Terms and Conditions …. Such form of acceptance is binding and Bidder acknowledges it shall be binding and enforceable pursuant to [the E-Sign Act] and applicable state laws.

Piliero Decl., Ex. 1 to Ex. 1, pp. 18, 22, 23.

Truman registered as a bidder for the auctions. It bid on a large number of loans. Truman claims Auction.com informed it that it was the winning bidder on 538 of the loans. Compl., ¶¶ 9-11; Piliero Decl., Ex. 1, ¶¶ 19, 28, 29, 40, 41.

Meanwhile, KIRP, LLC, which holds certificates secured by the trusts which owned some of the auctioned loans, filed a suit against Nationstar claiming that,

under the pooling and service agreement's terms, Nationstar lacked the authority to sell the trusts' loans.  KIRP obtained a temporary restraining order against sale of loans owned by the trusts in which it owned interests.  About 20% of the loans on which Truman had been the winning bidder were in those trusts.  Piliero Decl., Ex. 1, ¶¶ 43-45, Ex. 3.

Though KIRP's TRO was eventually dissolved, Nationstar informed Truman and other auction bidders that it had decided not to go through with the sale of the auctioned loans.  Compl., ¶¶ 14, 22; Piliero Decl., Ex. 1, ¶¶ 46, 49.

Between March and July 2013, Truman's attorney contacted Nationstar's counsel four or five times.  Each time, Truman's attorney argued that Nationstar should complete the sale of the auctioned loans or compensate Truman for not doing so.  Each time the potential for litigation was apparent if Truman's demands were not satisfied.  Sullivan Decl., ¶¶ 3, 4.  Nationstar's counsel replied that Nationstar had no intention of doing so and took the position that its conduct was justified by the Auction Terms.

These exchanges culminated in a formal demand letter which Truman's counsel sent on July 23, 2013, enclosing a draft complaint which he said would be filed in New York state court unless Truman's demands were met by the end of the month.  Piliero Decl., Ex. 4.

Nationstar filed this suit on July 25.  Piliero Decl., ¶4 & Ex. 2.  Truman filed its threatened suit in New York state court on July 29.  *Id.*, ¶ 3 & Ex. 1.  On August 22, Nationstar removed Truman's suit to the United States District Court for the Southern District of New York where it is now assigned to Judge Naomi Reice Buchwald as case no. 1:13-cv-5945.  Sullivan Decl., ¶ 7.

## III.

## TRUMAN IS BOUND BY THE AUCTION TERMS

Truman's motion to dismiss, like its entire case, is built on the false legal premise that it is not bound by the Auction Terms but is the beneficiary of some

80001.0013/2843521.1                              - 5 -

other "separate contract" under which Nationstar is obliged to sell Truman the loans on which it was the highest bidder on the Auction.com auction.

**A.     Truman Is Bound By The Auction Terms**

Contrary to Truman's contention,[1] it is bound by the Auction Terms, including their choice of California law and permissive selection of a California forum for dispute resolution.

As already noted, as a general rule, bids at an auction embody the terms made known to bidders by posting or otherwise.  Rest.2d Contracts, § 28(2).  Comment e to the cited section explains:

> The terms on which goods are to be sold at auction are often made known in advertisements or catalogues or posted at the place where the auction is to be held.  …  Ordinarily bidders are or should be aware of terms so published or announced.  A bid need not repeat such terms; it is understood as embodying them.  Hence, the bidder is held to the published or announced terms ….

Stated more succinctly:  "[B]y placing a bid in an auction, the bidder 'consent[s] to be bound by the terms in the catalog governing the auction.' "  *Hessel v. Christie's, Inc.*, 399 F.Supp.2d 506, 514 (S.D. N.Y. 2005) (*quoting Czasky v. Meyer,* 1995 WL 494574, at *1 (S.D. N.Y. 1995)).[2]

In this case, Auction.com prominently advertised its Auction Terms.  The Auction Terms appeared on Auction.com's website among the "due diligence documents" appended to the listing of each loan pool offered for auction.  The Auction Terms were also featured on the "property overview and description" screen for

---

[1]     *See* Mot., 10 n. 7 (claiming that the Auction Terms' choice of California law "is not controlling because [Truman] does not assert a breach of the Auction Terms themselves.  Rather [Truman] alleges that Nationstar breached a separate contract obligating it to sell the Mortgage Loans to [Truman] ….").

[2]     *Accord:  Early Auction Co. v. Koelzer*, 114 So.2d 1038, 1041-42 (Fla. App. 2013); *Young v. Hefton*, 38 Kan.App.2d 846, 851-52, 173 P.3d 671, 676 (2007); *Washburn v. Thomas*, 37 P.3d 465, 467-68 (Colo. App. 2001); *Geodyne Energy Income Prod. P'ship 1-E v. Newton Corp.*, 161 S.W.3d 482, 487-88 (Tex. 2005).

each loan pool. Also, Auction.com's website requires a prospective bidder to agree to the Auction Terms in order to complete its registration as a bidder in an auction conducted on the website.

Truman does not dispute this. Its complaint alleges that Auction.com published the Auction Terms "that would govern all the online auctions that it would conduct for Nationstar," and it attaches a copy of them to its complaint. Piliero Decl., Ex. 1 ¶ 17 & Ex. 1. Truman's complaint also alleges that, "as required by the Auction Terms," it "submitted an online registration which enable it to participate as a bidder" on auctions of Nationstar loans. *Id.*, ¶ 19.

Under the legal rule stated above, the Auction Terms that Auction.com advertised and that Truman was aware of and agreed to were implicitly "embodied in," and became part of, Truman's bids. As implicit terms of Truman's bids, the Auction Terms were also incorporated into any contract formed through acceptance of those bids. Acceptance of a bid necessarily accepts all the bid's terms—not just the bid price, but the description of the purchased property and the incorporated terms and conditions as well. Thus, if, as Truman claims, a contract was formed when Auction.com announced Truman was the winning bidder, that contract includes the Auction Terms, including their choice of law and permissive forum-selection clause provisions.[3]

As a matter of law, there cannot be a "separate contract" between Truman and Nationstar which excludes the terms on which the auction was conducted. Hence, the Auction Terms' choice of law and submission to jurisdiction provisions bind

---

[3] *See, e.g., Brooks v. Sotheby's,* 2013 WL 3339356, at \*5 (N.D. Cal. 2013) (enforcing a mandatory forum selection clause in an auction house's catalog for the auction at which plaintiff bid); *Early Auction Co.,* 114 So.2d at 1041-42 (same); *Samuel T. Freeman & Co. v. Hiam*, 2012 WL 2120474, at \*7-9 (E.D. Pa. 2012) (enforcing permissive forum selection and choice of law clauses in auction's Terms and Conditions of Sale).

80001.0013/2843521.1                    - 7 -

Memo. of P&As Opposing Motion to Dismiss

Truman in this litigation.  It cannot seek to enforce the contract supposedly formed on acceptance of its bid and avoid the portions of the incorporated Auction Terms that it now dislikes.

**B.    The Auction Terms Specified A Conditional Auction**

Truman is equally wrong in arguing that Auction.com's announcement that Truman was the winning bidder on certain loans "created a binding obligation for Nationstar to sell the … Mortgage Loans at the agreed price."  Piliero Decl., Ex. 1, ¶¶ 30, 42.  Contrary to Truman's assertion, it is not true that "the sale is complete when the auctioneer announces the winning bidder" "[i]n all auctions."  *Id*. at ¶ 15.

> While the general rule is that in a reserve auction, the seller may withdraw the property up until the "hammer-fall," an exception to that rule is where the seller specifically reserves the right to approve or reject the high bid at a later time.  In such a case, the hammerfall signals only the end of the bidding, rather than the consummation of the sale.

*East v. Brown*, 986 P.2d 523, 525 (Okla. Civ. App. 1999) (citations omitted).

California is among the many states following this rule.

> [W]here a right is reserved in the seller to reject any and all bids received, the right may be exercised by the owner even after the auctioneer has accepted a bid ….

*In re El Camino Press,* 31 B.R. 340, 344 (Bankr. C.D. Cal. 1983) (applying Cal. law) (*quoting Eugene Stud & Veneer, Inc. v. State Bd. of Forestry*, 3 Or.App. 20, 25, 469 P.2d 635, 637 (1970)).[4]

---

[4]    *Accord Biegler v. Kraft,* 924 F.Supp.2d 1074, 1089-90 (D. S.D. 2013); *Young*, 38 Kan.App.2d at 852-54, 173 P.3d at 676-77; *Moss v. Hudson & Marshall, Inc*., 267 Ga.App. 322, 323-24, 599 S.E.2d 279, 281-82 (2004); *Washburn*, 37 P.3d at 467-68; *Cuba v. Hudson & Marshall,* 213 Ga.App. 639, 649, 445 S.E.2d 386, 387-88 (1994); *Bradshaw v. Thompson*, 454 F.2d 75, 80-81 (6th Cir. 1972) (applying Tennessee law); *Continental Can Co. v. Commercial Waterway Dist. No. 1*, 56 Wash.2d 456, 347 P.2d 887 (1959), aff'd *en banc,* 354 P.2d 25 (1960); *Moore v. Berry*, 40 Tenn.App. 1, 7-10, 288 S.W.2d 465, 467-68 (1955); *City of New York v. Union News Co*., 222 N.Y. 263, 269-70, 118 N.E. 635, 636 (1918).

Here, the Auction Terms specifically reserved Nationstar's right to approve or reject bids after announcement of the winning bidder, stating:

> No obligation to sell shall be binding on Seller unless and until a written contract of sale or loan sale agreement is signed and delivered by Seller.  Seller reserves the right to rescind any oral acceptance of a winning bid prior to execution and delivery of an executed contract of sale or loan sale agreement for any reason.

Piliero Decl., Ex. 1 to Ex. 1, p. 22.

This provision clearly warned Truman that the loan auction was conditional. Announcement of a winning bidder would not form a binding contract.  Rather, the seller reserved the right to rescind after that announcement but before execution and delivery of the contract of sale or loan sale agreement.  The seller may rescind "for any reason."  So contrary to Truman's contention, Auction.com's announcement that Truman was the winning bidder on certain loans created no binding obligation for Nationstar to sell those loans to Truman.

## IV.

### THE COURT SHOULD EXERCISE ITS DISCRETION TO HEAR THIS DECLARATORY RELIEF ACTION

This Court is not compelled to decide a declaratory relief action.  Instead, it may decide, "in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial …." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 288 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942).

On this issue, the Court exercises broad, but not "unfettered," discretion. "[A] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Huth v. Hartford Ins Co*., 298 F.3d 800, 803 (9th Cir. 2002) (*quoting Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir.1998)).

> *Brillhart* sets forth the primary factors for consideration. A district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it

80001.0013/2843521.1                                           - 9 -

should avoid duplicative litigation.

*Huth*, 298 F.3d at 803 (citation omitted).

*Brillhart's* list of factors is non-exclusive. *Id.* As will be shown, the *Brillhart* factors do not favor dismissal of this case, and other factors—particularly, the Auction Terms' choice of California law and permissive selection of a California forum —weigh heavily in favor of this Court's exercising its discretion to hear this case.

## A. Needless Determination Of State Law Issues Is Not Decisive

A healthy concern for "cooperative federalism" is a major strand of *Brillhart's* analysis. *R.R. Street & Co., Inc. v. Transport Ins. Co*., 656 F.3d 966, 975 (9th Cir. 2011). State courts should be the principal interpreters of their own state's law. Federal courts should not *unnecessarily* interpret state law, particularly difficult or novel state law issues. So "*needless* determination of state law issues alone may support [dismissal or] remand." *Id.* (emphasis added).

This factor favors neither party to this litigation. Here, California law governs the parties' rights pursuant to the Auction Terms' choice of law clause. But the California state courts will never adjudicate this dispute.

Nationstar filed its action in this federal Court. Truman filed suit in New York state court. Nationstar has since removed the suit to New York federal court. No matter which suit proceeds, it will be a federal court that adjudicates the dispute. Neither suit will allow a California state court to interpret and apply California state law to Truman's dispute with Nationstar.

This was just as true before removal of Truman's suit as afterwards. Federalism favors a state court's interpreting and applying its own state's law, not a foreign state court's interpretation of another state's law. This federal court in California is better situated to determine and apply California law than a New York state or federal court, a continent away.

## B. Nationstar Did Not Forum-Shop

Under *Brillhart*, the court may decline to exercise jurisdiction over a declar-

80001.0013/2843521.1                                          - 10 -

atory relief action in order to discourage "forum shopping" and "reactive" litigation. *R.R. Street & Co., Inc.*, 656 F.3d at 975-76.  Contrary to Truman's assertion, Mot., 11, this factor does not favor dismissal of this action.

The "forum-shopping" that *Brillhart* seeks to discourage is the choice of a forum for "a tactical advantage" or because that forum is otherwise uniquely favorable to the party choosing it.  *Id.* at 976.  "Forum shopping refers to '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.' "  *Id.* at 981 (*quoting* Black's Law Dictionary 726 (9th ed. 2009)).

By contrast, even a "reactive" suit should not be dismissed when it is filed in a forum chosen for a proper purpose.  Thus, the Ninth Circuit has held the rule against forum shopping did not require dismissal of a "reactive" declaratory relief action when the forum was chosen for a proper purpose:

> Transport concedes that it filed the Removed Action in response to the Federal Action, but it did so not merely to seek a favorable forum but also to seek a forum that could resolve all issues related to the 1981 Policy in one comprehensive proceeding.

*R.R. Street & Co., Inc.*, 656 F.3d at 976; *see also id.* at 981-82 ("we cannot classify either party's actions as mere forum shopping. … Transport sought a comprehensive forum, not merely a favorable one.")

Here, Nationstar did not engage in "forum-shopping" as the Ninth Circuit uses that term.  It sought no tactical advantage in selecting this Court for its suit. This is not Nationstar's home court.  Nationstar, which is headquartered in Texas, had no reason to, and did not, believe this Court would favor it over Truman.

Instead, Nationstar chose this Court for the entirely proper reason that the Auction Terms select the state and federal courts in Orange County, California as the preferred forum for resolution of any dispute arising from the auction.  Thus, Nationstar did not forum-shop.

Indeed, if either party may properly be accused of forum-shopping, it is Truman, not Nationstar, that engaged in that disfavored practice.  Despite knowing it

had agreed to the Auction Terms which choose California law and a California forum, Truman filed suit in New York state court, its home court and has tried to take the further tactical advantage of that forum selection by advocating application of New York law and by maneuvering the case before the same judge who is hearing an unrelated suit arising from the same auction. These facts evidence improper forum-shopping.

> [T]he Hiams were aware that the Consignment Agreement includes a choice of law and a forum provision providing that Pennsylvania law would apply to any dispute between the parties, and that Pennsylvania courts were the proper forum for such litigation. … [T]hese facts indicate that the Hiams were potentially shopping for a forum in Massachusetts when they filed their complaint there because they believed this forum provided them with a distinct "benefit"—the application of Massachusetts statutory law to their dispute.

*Samuel T. Freeman & Co.*, 2012 WL 2120474, at *13 (citations & fn. omitted).

Nor can Nationstar be justly criticized for rushing to file suit, thereby preemptively foreclosing settlement negotiations that might have resolved the dispute without judicial intervention. *See id.* at *13-14. In fact, discussions between Truman and Nationstar about the auction sales had been on-going for months without advancing any closer toward amicable resolution. Sullivan Decl., ¶¶ 3-6.

From the outset of those discussions, Nationstar had denied liability to Truman, pointing to the same portions of the Auction Terms on which it relies in this lawsuit. Truman has never cited any legal authority for its contrary position or raised any legally sufficient reason for avoiding those terms. Truman's last demand letter and its complaint—both the draft sent with the demand letter and the final filed version—continue this same pattern. Both claim Nationstar is liable, but both simply ignore the relevant Auction Terms provisions without offering any legal reason Truman's contention that it is not bound by those terms.

Plainly, the parties' informal discussions were going nowhere. So when told suit was inevitable, Nationstar chose to file first in the court the parties agreed

80001.0013/2843521.1                                          - 12 -

would resolve the dispute, rather than waiting for Truman to file, as threatened, in its home court, a continent away.  This suit did not halt otherwise productive settlement discussions.  It is not the result of improper forum-shopping.  It should not be dismissed.

## C.      Discouraging Duplicative Litigation Favors Neither Party

As in *Huth,* 298 F.3d at 803-04, *Brillhart's* final factor—"avoiding duplicative litigation"—does not weigh in favor of dismissal.  This dispute will be disposed of entirely in one federal court, here or in New York, depending upon the outcome of this motion, and a similar motion in New York.

To avoid wasteful duplication of litigation expense and effort, one federal court must yield precedence to the other.  The New York federal court may and should yield to this Court, rather than vice versa, because this Court has a surer-footed grounding in California law, which the parties have chosen to govern their dispute, and because Truman agreed to litigate here.

"[M]erely because the [Southern District of New York] *can* hear this dispute does not mean that it *should*."  *Samuel T. Freeman & Co.*, 2012 WL 2120474, at *8.  "Familiarity with local law, judicial economy and common sense dictate that a [California] court should interpret provisions of [California] law rather than having [New York] interpret the laws of a distant forum."  *Id.* at *9.  And, as in *Freeman*, all parties have consented to suit here.  *Id.*

There is no presumption either against this Court's exercise of discretionary jurisdiction, *Dizol,* 133 F.3d at 1225, and in favor of the New York federal court's exercise of jurisdiction.  This factor does not weigh in Truman's favor.[5]

---

[5]      In its motion, Truman emphasizes that it maneuvered its suit to the same state court judge who is hearing the KIRP action.  Mot., 12.  That "advantage" to Truman's suit no longer obtains as Nationstar has removed the suit to federal court.  Even before removal there was no great advantage in having the same judge hear both suits.  Though they arise from the same auctions, the two suits require inter-

(Fn. cont'd)

**D.      Other Factors Favor This Court's Retaining Jurisdiction**

As mentioned, *Brillhart's* three factors are principal considerations in deciding whether to accept or decline jurisdiction over a declaratory relief suit, but the Court may consider other relevant factors as well.  *Huth*, 298 F.3d at 803.  The other factors in this case weigh decisively in favor of this Court's retaining jurisdiction of this suit.

### 1.      The Choice Of Law And Forum Selection Clauses Show This Court Is The Proper And Preferred Forum

The Auction Terms' choice of California law and their selection of Orange County, California state and federal courts as the preferred, though not mandatory, forum for resolution of disputes arising from the auction strongly favor this Court's exercising its discretion in favor of entertaining Nationstar's suit.

As already pointed out, this Court's greater familiarity with California law makes this Court the more appropriate forum for resolution of this dispute, "rather than having [a court in New York] interpret the laws of a distant forum."  *Samuel T. Freeman & Co.*, 2012 WL 2120474, at *9.

> There is an appropriateness … in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems … in law foreign to itself.

*Van Dusen v. Barrack,* 376 U.S. 612, 645 (1964); *accord:  In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F.Supp. 188, 196 (E.D. N.Y. 1994) ("Federal courts have generally favored adjudication of a controversy by the court which sits in the state whose law will provide the rules of decision.").

Truman's consent to sue and be sued here also weighs in favor of this Court's

---

(Fn. cont'd)

pretation of entirely separate agreements—in the KIRP action, primarily the pooling and service agreement governing the securitized trusts in which KIRP holds interests—while it is the Auction Terms which govern Truman's dispute.

retention of jurisdiction.  Though the Auction Terms' forum selection clause is per-missive, not mandatory, the clause nevertheless shows that the parties already agreed this Court is a proper forum for resolving this dispute.  That Truman could file suit in New York or elsewhere without breaching the Auction Terms does not show suit in that distant forum is preferable.  *Samuel T. Freeman & Co.*, 2012 WL 2120474, at *8-9.

> [A]lthough the forum selection clause is permissive, the fact that the parties contemplated Pennsylvania as a possible forum is entitled to "substantial consideration" in this analysis.  Further, "[w]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue.... [Thus,] the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum."  Here, after providing Unisys the opportunity at oral argument to explain "why they should not be bound by their contractual choice of forum," Unisys failed to provide the Court with a salient reason why deference to the choice of forum in the forum selection clause is inappropriate.

*Unisys Corp. v. Access Co., Ltd.*, 2005 WL 3157457, at *5 (N.D. Cal. 2005) (citations omitted).

### 2.    **This Suit Was Filed First**

This suit was the first filed.  Ordinarily, the first filed suit is given preference.

> Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action. However, this "first to file" rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration.

*Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 95 (9th Cir. 1982).

Admittedly, the first-filed rule is given less weight when the actions are filed nearly contemporaneously as these were.  *Huth,* 298 F.3d at 804.  Nevertheless, this factor, too, weighs in favor, not against this Court's retaining jurisdiction, as none of the exceptions to the first-filed rule apply for reasons explained above.

80001.0013/2843521.1

- 15 -

At a minimum, the fact that this suit was filed first gives this Court preference in deciding which of the two actions will proceed. *See MSK Ins., Ltd. v. Employers Reinsurance Corp.,* 212 F.Supp.2d 266, 267 (S.D. N.Y. 2002) ("This District has laid down a bright-line rule for situations such as this: The court before which the first-filed action was brought determines which forum will hear the case.")

### 3.     This Suit Serves A Purpose

Contrary to Truman's argument, Mot., 13, this suit serves a useful purpose. It will resolve Truman's claims against Nationstar. Truman may counterclaim here and place its damage claims as well as Nationstar's declaratory relief claim before this Court.

Of course, as Truman urges, the same could occur in the New York federal court. But for the reasons already stated, there is no reason to prefer that forum for the resolution of this dispute, and plenty of reason to prefer this Court instead.

### 4.     Truman's Choice Of Forum And Convenience Of Witnesses

Contrary to Truman's contention, Mot., 13-14, its choice of a New York forum is not entitled to deference, even if it is properly deemed the "plaintiff" in these actions. "While courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue...." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995).

Neither Truman's residence in New York nor the fact that Nationstar transacts business in that state as in all 49 others shows that New York is a convenient for-um—let alone the more convenient forum—for the resolution of this dispute. *See* Mot., 14. Witness location weighs more heavily than party residence. Here, the most relevant non-party witnesses and documents are in Orange County, California, at Auction.com headquarters, rather than in New York. This Court can compel the presence of those witnesses and documents. Courts in New York, state or federal, cannot.

Nor does it matter that Truman's suit names two additional parties.  Neither the Truman 2012 SC2 Title Trust nor U.S. Bank as trustee of that trust bid at the Auction.com auction, only Truman did.[6]  Auction.com announced Truman, not the trust or its trustee, was the winning bidder on the loans in question here.[7]  The only alleged involvement of the trust or trustee is that had Truman succeeded in purchasing the loans it would then have transferred title to those assets to the trust.[8]

Ordinarily, a person or entity that is not a party to a contract lacks standing to enforce it.  *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681-82 (9th Cir. 2009).  Truman tries to circumvent this rule by claiming it was acting as agent for the trust and trustee, even though it registered and bid solely in its own name.  *See* Mot., 3.  But that assertion offers Truman no escape because if it was acting as the trust and trustee's agent, it bound them as well as itself to the Auction Terms and thus submitted them to this Court's jurisdiction.  If they, indeed, are parties with an interest in this dispute, they can be as easily joined in this suit as in the New York action.  As already stated, the fact that these new parties call New York home is entitled to no weight at all in choosing between suit here and suit in New York.

## V.

## CONCLUSION

For the reasons stated above, the Court should deny the motion to dismiss.

---

[6]     " … TCA [Truman] timely placed bids, in multiple pools, on 480 of the Mortgage Loans offered for sale."  Piliero Decl., Ex. 1, ¶ 28; *see also id.* at ¶ 40.

[7]     "At the conclusion of the auction, Auction.com confirmed in writing that TCA was the winning bidder with respect to multiple pools totaling 304 Mortgage Loans."  Piliero Decl., Ex. 1, ¶ 29; *see also id.* at ¶ 41.

[8]     " … TCA [Truman] is charged with identifying potential investments in residential mortgage loans and real estate owned properties ….  Once purchased, title to the residential mortgage loans and real estate owned properties are deposited into the Trust."  Piliero Decl., Ex. 1, ¶ 8.

DATED:  September 27, 2013         SEVERSON & WERSON
                                   A Professional Corporation


                                   By:  _____*s/ Eric J. Troutman*_____
                                               Eric J. Troutman

                                   Attorneys for Plaintiff
                                   NATIONSTAR MORTGAGE, LLC